The opinion of the Court was delivered by
DARCAN, Ch,
Anna McKenna,, wife of the defendant, Wm. McKenna, by virtue of a deed of marriage settlement between herself and her husband, before marriage, had a' separate estate consisting, at the time of her death, on the 26th February, 1848, of real estate to the amount of $3000, and of personal estate to the value of $15,000. The deed of settlement secured to her a general power of appointment. But. this she never exercised, and died intestate, leaving her husband, the said Wm. McKenna, surviving her. She left no issue, nor brothers, nor sisters, nor children of brothers or sistersj and her nearest collateral relation was her uncle, one Wm. Miller, of Butts county, in the State of Georgia, who, under the law of distributions, was -entitled to one third of her estate, while her said husband was entitled to two thirds thereof.
Miller received the first intimation of his rights, in the estate of Anna ' McKenna, from the complainant, Ballard, who also informed him, that his rights would' have to be contested in a law suit. Miller was, at that time infirm and advanced in life, penniless, and dependant for subsistence and shelter upon his son-in-law, Pleasant H. Glass, with whom he resided. From Glass and his wife, who was Miller’s daughter, he received that kindness and support due from children to parents under those unfortunate cir-cuijistances.
The complainant is the son of a .pre-deceased aunt of Mrs. McKenna,who was the sister of Miller. ’Living in the immediate vicinity of the intestate, he became aware of Miller’s probable rights in her estate. I say his probable rights; for although it *364 was very clear tbat Miller was a distributee : as a matter of fact, it was deemed very uncertain whether McKenna would not assert a claim to the whole estate by the deed, or will, of his wife, executed under her power of appointment. It was also supposed that he might have large claims against his wife’s separate estate.
With this information as to the circumstances attending the claim, the complainant made a visit to Miller, in Georgia. His object was to make a contract with his uncle, by which he should be authorized to prosecute his claim for a distributive share of Mrs. McKenna’s estate, and to receive his remuneration out of the property to be 'recovered. The interview took place at the house of Glass. The complainant proposed to prosecute the law suit at his own hazard, and expense, and to have, as compensation, one half of Miller’s share, when it should be realized. The proposal was made, and the negotiation opened in the presence of Glass and his wife, (Miller’s daughter). On the next day Ballard, Miller and Glass repaired to the county seat of Butts, for the purpose of having an interview and consultation with Miller’s counsel. This gentleman had, for many years before, borne the relation of legal adviser to Miller, enjoyed a distinguished reputation for his probity, and forensic talents and success, and has since been promoted to the Bench of the Superior Court of Georgia. Upon a full discussion, and consideration of all the circumstances, Miller was advised, by his learned counsel, to enter into the contract on the terms proposed. This was accordingly done. A contract, upon those terms, was then prepared by the counsel, and executed by Miller and the complainant. It was dated the 28th April, 1848.
The complainant then returned to South Carolina, administered upon the estate of Mrs. McKenna, filed a bill in Equity against the defendant, and prosecuted the same to a hearing and judgment. The decree adjudged that the marital rights of McKenna had not attached upon Mrs. McKenna’s separate estate, that she died intestate as to the same, that it was subject to partition among her heirs at law and distributees, that the husband was entitled to two *365 thirds thereof, and the next of kin to the remaining third, and ordered the administrator to account to the proper parties. About this time Miller died. The complainant became the administrator of Miller, filed'his bill of revivor against McKenna, making the distributees, of Miller, parties defendant, and added, by way of supplement, a statement of his claim against the estate of Miller under the contract of the 28th April, 1848 ; praying that his share, as secured by that agreement, should be allowed him in the settlement and partition among Miller’s distributees.
The claim of the complainant, under his contract, with Miller, of the 28th April, 1848, has met with an opposition more or less active, from all the distributees of Miller, with the exception of Pleasant H. Glass and his wife.
The claim of Ballard is resisted, by the defendants, on three grounds ; 1st. That the contract was fraudulently obtained ; 2d. That the consideration was extravagantly disproportioned to the services to be rendered, and is so excessive, that the contract, being executory, should not be enforced by this Court; and 3d. That the contract was null and void, in its inception, on account of the insanity of Miller at the time of its execution.
As to the first ground, this Court perceives nothing in the evidence by which it may be supported There was no fiduciary relation subsisting at that time between the contracting parties. There was no fraudulent misrepresentation or concealment. There was no mis-statement of any kind as to material facts. It seems that he over-estimated Miller’s share. One of the witnesses says that he represented the whole estate of Mrs. McKenna at eight or ten thousand dollars. But this is obviously a mistake of the witness. And the Court is disposed to believe the statement of the other witness, who testified on this point: who says that Ballard, in the presence of Glass, represented the share of Miller at eight or ten thousand dollars. I cannot suppose that this overestimate of Miller’s share was intentional. This would have a tendency to operate against Ballard in obtaining the contract on the terms proposed: for in proportion as Miller’s probable share *366 was magnified, would, one half of it, as remuneration for the prosecution of the claim, become excessive, and Miller’s mind become indisposed to grant such conditions. Iiis estimate was nothing but a conjecture, innocent in intention; for he had.no means of knowing the precise value of the estate, and immaterial in its consequences, for it had no tendency to secure him an advantage, but rather the reverse.
One witness spoke of Ballard as having represented himself to Miller as a co-heir and distributee. I much doubt the accuracy of this witness. He certainly did not so represent himself in the presence of Miller’s counsel and his son-in-law, when the agreement was made and executed. I can scarcely suppose that he held different language on this point upon the two occasions. And conceding that he did represent himself as co-heir and distribu-tee, I cannot perceive that it would have any material bearing upon the fairness of the contract. Like the other alleged misrepresentation, if it had any material effect, it would be rather to thwart than to aid him in obtaining a favorable contract. For Miller might very well suppose, that if Ballard was a co-heir and distributee, he would at all events prosecute the claim on his own account; and might, under these circumstances, afford to take a lower remuneration for prosecuting his (Miller’s) claim, which depended upon the same facts, and principles of law, and which would, as a matter of course, be embraced, in the same proceedings.
This Court is also of the opinion, that the objection to the contract, founded on the excess of the consideration, is equally unsupported. It seems to the Court, that under all the circumstances of the case ; the uncertainty that then existed as to the result, 'and the hazards incurred by Ballard, in the event that the suit was unsuccessful, all of which were entirely assumed by him, the contract was fair, just and reasonable. It had the unqualified approbation of Miller’s son-in-law (Glass) and his daughter, with whom he resided and by whom he was supported, upon a full and fair exposition of all the circumstances. It was also earnestly *367 recommended by his able and experienced counsel, who acted on the occasion as much in the character of a personal friend as a legal adviser, and who thought then, and still thinks, that the contract was just and reasonable. In fact it is only the fortunate result, that gives it any other aspect, even to those who now object to it, and who I doubt not would have approved, if they had been consulted when the contract was made. Finally, it is such a contract as this Court would unhesitatingly enforce by its decree, if it was free from the difficulty involved in the third objection above stated, namely, the sanity of Miller at the time of the execution of the contract.
As to the sanity of Miller at the date of the contract, the evidence is so contradictory and difficult to be reconciled, the Court has been able to arrive at no conclusion satisfactory to itself.— When we regard the evidence adduced on this point in behalf of the distributees of Miller, it makes a very strong ease against his sanity. But, on the other hand, the evidence of Judge Starke, who was his legal adviser,., and who„-drafted the agreement, and recommended him to make it, represents him upon that occasion, as so calm and collected, so fully possessed of all the faculties of his understanding, as renders it very difficult to believe that he was, at that time, laboring under mental alienation. It was Miller who opened the discussion upon the subject, as to which the witness was to be consulted. It was Miller who, stated all the circumstances of the case,' the relationship with Mrs. McKenna, and with Ballard, and his confidence in the latter from his being a deceased sister’s child. He did not occupy the back ground on that occasion, as a lunatic or imbecile would naturally have done, but led the conversation. After making a lucid statement of the facts, exciting no distrust as to his sanity, and his statement being confirmed by Ballard, he asked the advice of his counsel.— And on receiving a favorable opinion, and being recommended to go into the contract with Ballard on the terms proposed; not content vmk this, and with a shrewdness and delicacy which a lunatic would hardly have exhibited, he sought a private interview *368 with his legal adviser, where he might have a freer conference.— It would be very difficult to doubt the veracity or the accuracy of this witness, who for many years before this period bore intimate professional relations with Miller, and had the most ample opportunities of noting the decadence of his understanding. In the view of an intelligent witness who knew him well, and who states not opinions merely, but facts, Miller’s bearing upon the occasion of the execution of the contract, was so reasonable, so self-possessed, so much that of a sane man in every respect, that the Court experiences the greatest degree of embarrassment, when it looks at the great mass of evidence on the other side, going to show that before that time he was an extravagant lunatic.
Under this state of circumstances, the Court is disposed to seek aid and relief from the embarrassment by a resort to the usual mode, namely, an issue before a Jury. At the same time that an issue is ordered, it will be necessary to the ends of justice between these parties, that further orders shall be made. If the final judgment of the Court shall be, that Miller was a lunatic at the date of the agreement, and that the same was not executed during a lucid interval, it follows, as a matter of course, that the instrument as a contract is a nullity. But it by no means follows, that Ballard will not, in that event, be entitled to compensation for his services, and his risks. If one enters into a contract with a lunatic withput a knowledge of his lunacy, and the contract is in other respects made in good faith; and in pursuance of the contract, renders him important services, by which the lunatic receives great benefits, though the contract be void, the party rendering the services is entitled to just and reasonable compensation. If an overseer, for example, contracts with a lunatic, without knowing him to be such, to superintend his planting interest, and does in fact perform the services, can it be doubted that he would be entitled to just compensation ? Or, if a mechanic, under the like circumstances, contracts to build a house on the lunatic’s land, and to furnish the materials, and ht>does in fact bestow his labor and capital in the improvement of the *369 lunatic’s estate, he is entitled in equity, not to recover upon the contract, (which is a nullity, though he was ignorant of the lunacy,) but to be reimbursed to a reasonable extent, provided his labor and capital has improved the value of the lunatic’s estate. And this irpon the principle, that a contract that is void, should be void as to both parties. And inasmuch, as in the cases supposed, the parties cannot be restored to the statu quo; the mechanic cannot have back his labor and his capital, and the overseer cannot have restored to him his services and his time consumed in the performance of those services, and their conduct has been bona fide, this Court will aid them in obtaining a fair and just remuneration, provided their services have been actually beneficial to the lunatic.
On the supposition, that Miller shall be found to have been a lunatic at the date of the contract, this appears to be the situation of Ballard. He was ignorant of the lunacy, (so far as it appears,) the contract was fairly made, and the compensation was reasonable and just as I have before stated. His services under the contract were important and successful. They secured to Miller his distributive share of Mrs. McKenna’s estate; which, but for those services, in all probability he would never otherwise have obtained.
If Miller was not a lunatic, Ballard is entitled to have his contract enforced. And if he (Miller) was a lunatic at the date of the contract, the complainant is entitled to remuneration out of Miller’s estate, in his hands, in proportion to the value of the services rendered, the degree of pecuniary responsibility and expenditure incurred, and the time and labor expended. And it is so ordered and decreed. It is further ordered and decreed, that the complainant, if the issue as to the lunacy of Miller be determined against him, shall have the privilege of going before the Commissioner in Equity of Lancaster, after due notice to the opposite party or their counsel, for the purpose of ascertaining the amount of compensation to which he is entitled on the principles of this *370 decree. And the commissioner is hereby ordered, on a proper application, to institute such inquiry.
It is further ordered and decreed, that an issue at law be made up to be tried by a jury, in the Court of Common Pleas for Lancaster district, in which the following questions shall be submitted : First, whether William Miller, late of Butts county, in the State of Georgia, was a lunatic on the 28th April, 1848; and secondly, if the said William Miller was, at or before that time, a lunatic, whether the contract between the said Wm. Miller and Thomas Ballard, dated 28th April, 1848, was executed by the said Wm. Miller during a lucid interval.
It is further ordered and decreed, that, in the said issue, the said Ballard shall file the declaration, and in other respects be the actor in the proceedings.
It is further ordered and decreed, that the said Ballard shall be entitled to waive the making up and trial of the issue hereby ordered, (by which waivor he shall be considered as admitting the lunacy,) and go at once before the commissioner, upon the inquiry herein before ordered to be made upon the quantum meruit.
The question of costs is reserved.
The circuit decree is modified in conformity with this appeal decree. And it is so ordered.
JOHNSTON, DuNKIN and Wabjdlaw, CC., concurred.

Decree modified.